UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LENNARD TOCCALINE, | : | PRISONER CASE NO. |
|     Petitioner, | : | 3:10-CV-1404 (JCH) |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER, | : | FEBRUARY 23, 2012 |
|     Respondent. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 14)
& MOTION TO AMEND PETITION FOR WRIT
OF HABEAS CORPUS (DOC. NO. 27)**

The petitioner, Lennard Toccaline, currently confined at Garner Correctional Institution in Newtown, Connecticut, commenced this action for writ of habeas corpus pro se pursuant to 28 U.S.C. § 2254. He challenges his 1999 state court convictions for sexual assault and risk of injury to a child. The respondent has moved to dismiss on the ground that the Petition is untimely and equitable tolling is not warranted. The petitioner has filed a Memorandum in Opposition to the Motion to Dismiss together with exhibits in support of the Memorandum and has also filed a Motion to Amend to add a new claim to the Petition. For the reasons that follow, the Motion to Amend will be denied and the Motion to Dismiss will be granted.

**I.     MOTION TO AMEND**

The petitioner seeks to add a claim that the attorney who represented him in his first state habeas petition was ineffective. See Mot. to Amend (Doc. No. 27). Pursuant to 28 U.S.C. § 2242, a petition for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." Rule 15(a) of the Federal Rules of Civil Procedure sets forth the standard for granting or denying a motion to amend a habeas petition. See Littlejohn v. Artuz, 271 F.3d 360,

363 (2d Cir. 2001). Under Rule 15(a)(1), a party may amend his pleading once as of right "within 21 days after serving [the pleading], or . . . [within] 21 days after service of a responsive pleading or 21 days after service of a motion" to dismiss, for more definite statement or to strike, "whichever is earlier." The respondent filed a Motion to Dismiss on June 20, 2011. Doc. No. 14. Because the plaintiff's Motion to Amend was filed more than twenty-one days after service of the Motion to Dismiss, the petitioner may not amend as of right. After the time to amend as of right has passed, "[t]he court should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

The interests of justice do not require permitting the plaintiff leave to add the claim of ineffective assistance of habeas counsel. Section 2254(I) states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(I). Furthermore, the Supreme Court has held that the Sixth Amendment right to counsel does not extend to a collateral attack on a conviction. See Coleman v. Thompson, 501 U.S. 722, 755-57 (1991) (there is no right to counsel in state collateral proceedings); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). Because there is no federal constitutional right to counsel in a state habeas proceeding, a ground for relief asserting a claim of ineffective assistance of habeas counsel is not cognizable in this action. Thus, the addition of a claim of ineffective assistance of habeas counsel would be futile. See Foman v. Davis, 371

U.S. 178, 182 (1962) (the court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice and futility of the amendment, in determining whether to grant leave to amend). The request for leave to file an amended petition is denied.

## II.  MOTION TO DISMISS

The respondent argues that the petitioner is not entitled to federal habeas relief because he filed the present Petition after the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) expired. The petitioner contends that he is entitled to equitable tolling of the statute of limitations.

### A.  Procedural Background

In September 1999, a jury in the Connecticut Superior Court for the Judicial District of Windham, Connecticut, convicted the petitioner of sexual assault in the first degree in violation of Conn. Gen. Stat. § 53a-70(a)(1), sexual assault in the fourth degree in violation of Conn. Gen. Stat. § 53a-73a; and three counts of risk of injury to a child in violation of Conn. Gen. Stat. § 53-21(2). The petitioner then elected to be tried by the court on a persistent dangerous felony offender charge which was based on a 1982 conviction for first degree sexual assault. The court found the petitioner guilty of being a persistent felony offender in violation of Conn. Gen. Stat. § 53-40(a).

On November 12, 1999, the court sentenced the petitioner to forty years of imprisonment, execution suspended after twenty-five years, and ten years of probation. See Pet. Writ Habeas Corpus (Doc. No. 1) at 2. On appeal, the petitioner argued that the trial court had erred in permitting an expert witness to testify as to his guilt and the credibility of the victims' claims that he had sexually assaulted her. See State v. Toccaline, 258 Conn. 542, 547 (2001). On November 13, 2001, the Connecticut

Supreme Court affirmed the judgment of conviction. See id. at 553. The petitioner did not file a petition for certiorari in the United States Supreme Court.

On March 2, 2002, the petitioner filed a habeas petition in state court challenging his 1999 conviction. He raised three claims in his second amended petition for writ of habeas corpus. He argued that trial counsel was ineffective, appellate counsel was ineffective, and he was factually innocent  On September 12, 2002, after an evidentiary hearing, a Superior Court Judge granted the petition as to the ineffective assistance of trial and appellate counsel claims and denied the petition as to the claim of actual innocence. See Toccaline v. Commissioner of Corrections, No. CV020814816S, 2002 WL 31304820 (Conn. Super. Ct. Sept. 12, 2002). On appeal to the Connecticut Appellate Court, the respondent argued that "the [state habeas] court (1) misapplied the standard for determining whether trial counsel rendered effective legal assistance, (2) improperly considered claims not raised in the petition and (3) incorrectly determined that the petitioner had established ineffective assistance of appellate counsel." Toccaline v. Commissioner of Correction, 80 Conn. App. 792, 795 (2004). On January 4, 2004, the Connecticut Appellate Court reversed the decision of the state habeas court as to the claims of ineffective assistance of trial and appellate counsel and remanded the matter with a direction to enter a judgment dismissing the amended petition for writ of habeas corpus. See id. at 820. On March 12, 2004, the Connecticut Supreme Court denied certification to appeal the decision of the Connecticut Appellate Court. See Toccaline v. Commissioner of Correction, 268 Conn. 907 (2004).

On February 25, 2005, the petitioner filed a second petition for writ of habeas corpus challenging the 1999 convictions. In a second amended petition filed on June

10, 2008, the petitioner claimed that counsel in the first habeas petition was ineffective in numerous ways. On June 25, 2008, after an evidentiary hearing, a Superior Court Judge denied the amended petition. See Toccaline v. Warden, No. CV054000344, 2008 WL 2796997 (Conn. Super. Ct. June 25, 2008). On February 23, 2010, the Connecticut Appellate Court affirmed the decision of the habeas court. Toccaline v. Commissioner of Correction, 119 Conn. App. 510 (2010). On March 30, 2010, the Connecticut Supreme Court denied certification to appeal the decision of the Connecticut Appellate Court. See Toccaline v. Commissioner of Correction, 295 Conn. 921 (2010).

The petitioner filed the present Petition on July 19, 2010, the date he signed the Petition and presumably gave it to prison officials for filing.[1]

### B. Factual Background

Based on the evidence presented at trial, the Connecticut Supreme Court determined that the jury reasonably could have found the following facts:

> The victim, MC, was born on May 7, 1984. In 1996, the [petitioner], who was thirty-five years old, was the boyfriend of the victim's aunt. The [petitioner] and the victim's aunt lived together in a house near a lake, where MC sometimes visited. Usually, the [petitioner] went to MC's house to pick her up and bring her to her aunt's house. During the visits, MC and the [petitioner] often played video games or went fishing together.
>
> Three acts of sexual contact by the [petitioner] occurred during the period from June, 1996, through September, 1996, when MC was twelve years old. In the first incident, the [petitioner] kissed MC's breasts and vaginal area. In the second incident, which occurred in August, 1996, when the

---

[1] The Second Circuit considers a complaint or petition to be filed in federal court on the day the inmate gives the document to prison officials for mailing. See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (Second Circuit has held that a pro se prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court) (citing Houston v. Lack, 487 U.S. 266, 270 (1988)).

[petitioner] and MC were fishing from a boat on the lake, the [petitioner] placed MC's hand on his penis. He then put his hand over hers and manually stimulated himself until he ejaculated. During the third incident, which occurred in September, 1996, the [petitioner] invited MC to come to his bed. He then got on top of her, pinned her hands above her head, and penetrated her vagina with his penis. MC did not tell her mother or aunt about the events with the [petitioner] because she was afraid of the [petitioner]. In October, 1996, MC and her family moved to another state.

In February, 1998, while cleaning MC's bedroom, her mother found a letter written to MC from a man named W, who was a friend of MC's family. W had begun to baby-sit for MC and her siblings in the summer of 1997.[2] At that time, W was thirty-two years old and MC was thirteen. In the letter, W told MC that he wanted to hold her and take her pain away.

MC's mother was concerned about the contents of the letter and confronted W about his relationship with MC. Her mother also confronted MC about her relationship with W. Although she denied any sexual contact with W, MC told her mother about the incidents that had occurred with the defendant during the summer of 1996. MC also had told W about the [petitioner's] conduct prior to disclosing this information to her mother.

The [petitioner] gave a statement to the police in which he responded to MC's allegations of sexual abuse. In the statement, the [petitioner] claimed that he and MC often "horse played" together. The [petitioner] admitted that he may have had sexual contact with MC during this horseplay, although, he claimed, MC never objected to such contact and that the contact did not constitute intercourse.[3] The statement was

---

[2]  Footnote 6 in the Connecticut Supreme Court's opinion reads as follows:
> At the trial, W admitted that he and MC had kissed on one occasion, although both denied that they had engaged in any sexual relations. W was investigated by the local police and family services unit, but no charges were brought against him.

Toccaline, 258 Conn. at 546 n.6.

[3]  Footnote 7 in the Connecticut Supreme Court's opinion provides:
> The [petitioner's] statement provided in relevant part: "On one occasion when [MC] was over she and I had been horsing around.... I recall that MC usually had worn either a halter top and shorts, a bathing suit or usually some other summer attire. During our 'horsing around' I recall that I moved her T-shirt up exposing her mid section, put my mouth on her skin and blew onto her skin causing a fart like noise.... I may have put my mouth on her in the area of her breasts and if I hit any part of her breast it was by accident. [MC] had just begun to develop her breast[s] and my

6

entered into evidence and read aloud to the jury.

See Toccaline, 258 Conn. at 545-47.

    C.    Standard of Review

Federal habeas corpus statutes impose a one-year statute of limitations on federal petitions for writ of habeas corpus challenging a judgment of conviction imposed by a state court. See 28 U.S.C. § 2244(d)(1). The limitations period begins on the completion of the direct appeal or the conclusion of the time within which an appeal could have been filed and may be tolled for the period during which a properly filed state habeas petition is pending. See 28 U.S.C. § 2244; Williams v. Artuz, 237 F.3d 147, 151 (2d Cir.), cert. denied, 534 U.S. 924 (2001).

The doctrine of equitable tolling applies in section 2254 cases. See Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). Equitable tolling may be applied in habeas

---

    mouth never touched her nipples.... During the time when [MC] and I were horsing around [on the boat] I may have had an erection and [MC] may have grabbed my erection by accident. When she may have grabbed my erection she didn't make a big deal about it. I never asked [MC] to grab my erection. After [MC] grabbed my erection, she didn't make a big deal about it and I never mentioned this incident to anyone.... On one occasion, I recall being on my bed in the bedroom.... During our 'horsing around' I ended up on top of her on the bed. Sometime during our horsing around she would sometime[s] get the advantage and end up on top of me. When I ended up on top of her I recall having her arms pinned up above her head holding her down. I was on top of her for just a couple of minutes and as I was on top of her she was moving around trying to get away.... While she was trying to get away her clothes were moving around. During the time I was on top of her when we were horsing around, it's possible that I became excited and got an erection. Being in the position that I was in on top of her she would have felt my erection in the area of her vagina. Due to the fact that we were both moving around she may have misunderstood that for sexual contact.

Toccaline, 258 Conn. at 547 n.7.

7

cases only in extraordinary and rare circumstances and requires the petitioner to show that he has been pursuing his rights diligently, but extraordinary circumstances prevented him from timely filing his petition.  See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir.), cert. denied sub nom. Diaz v. Conway, 555 U.S. 870 (2008).  The threshold for a petitioner to establish equitable tolling is very high.  See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.) (acknowledging high threshold for establishing equitable tolling), cert. denied, 531 U.S. 840 (2000).

The standard for determining whether a petitioner diligently pursued his rights is reasonable diligence.  The court must determine whether the petitioner has shown that he "act[ed] as diligently as reasonably could have been expected under the circumstances" throughout the entire time period he seeks to have the court equitably toll.  Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003) (emphasis in original).

When determining whether circumstances are sufficiently extraordinary to justify tolling, the court considers "how severe an obstacle it is for the prisoner endeavoring to comply with the AEDPA's limitations period."  Diaz, 515 F.3d at 154.  The inquiries into extraordinary circumstances and reasonable diligence are related.  The petitioner must show "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing."  Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).  A petitioner cannot establish the required causal relationship if, "acting with reasonable diligence," he could have timely filed his petition notwithstanding the extraordinary circumstances."  Id.

D.  Discussion

The petitioner's conviction became final on February 11, 2002, at the expiration of the ninety-day time period during which a petition for writ of certiorari could have been filed with the United States Supreme Court seeking review of his conviction.  See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir.) (the limitations period specified in 28 U.S.C. § 2244(d)(1)(A) commences at the completion of certiorari proceedings in the United States Supreme Court or at the conclusion of the time within which a petition for certiorari could have been filed), cert. denied, 534 U.S. 924 (2001).  The limitations period began to run on February 12, 2002, and was tolled nineteen days later, when the petitioner filed his first state habeas petition on March 4, 2002.  The limitations period remained tolled throughout the pendency of his first state habeas petition until the Connecticut Supreme Court denied certification to appeal the decision of the Connecticut Appellate Court on March 12, 2004.  See Toccaline, 268 Conn. 907.

The petitioner filed a petition for writ of certiorari in the United States Supreme Court on June 9, 2004.  The United States Supreme denied the petition on October 4, 2004.  The statute of limitations period, however, is not tolled during the pendency of petition for certiorari in the United States Supreme Court seeking review of a judgment denying state post-conviction relief.  See 28 U.S.C. § 2254(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); Lawrence v. Florida, 549 U.S. 327, 332 (2007) (one-year statute of limitations not tolled during pendency of petition for certiorari to United States Supreme Court seeking review of judgment denying state post-

conviction review because an application for state post-conviction review is no longer pending "[a]fter the State's highest court has issued its mandate or denied review"); Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir.1999) ("[A] state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."), aff'd, 531 U.S. 4 (2000).

Thus, the limitations period began to run again on March 13, 2004, the day after the Connecticut Supreme Court denied certification to appeal the decision of the Connecticut Appellate Court. The limitations period was tolled 348 days later on February 25, 2005, when the petitioner filed a second state habeas petition. The limitations period remained tolled throughout the pendency of his second state habeas petition until the Connecticut Supreme Court denied certification to appeal the decision of the Connecticut Appellate Court on March 30, 2010. See Toccaline, 295 Conn. 921. The limitations period began to run again on March 31, 2010, the day after the Connecticut Supreme Court denied certification to appeal the decision of the Connecticut Appellate Court. The petitioner filed the present Petition on July 19, 2010. Thus, the statute of limitations ran for a total of 477 days.

The respondent argues that the Petition is barred by the statute of limitations and should be dismissed. The petitioner argues that the limitations period should be equitably tolled because the State of Connecticut did not provide him legal assistance in order to file a federal habeas petition. The petitioner also claims that he has newly discovered evidence of actual innocence that should equitably toll the statute of limitations.

1.    Actual Innocence

The petitioner claims that newly discovered evidence shows that he is factually innocent of the crimes for which he was convicted in 1999. He argues that this newly discovered evidence should toll the statute of limitations. He cites to the "miscarriage of justice" exception set forth in Schulp v. Delo, 513 U.S. 298 (1995), in support of this argument. The petitioner does not specifically describe this newly discovered evidence. Instead, he argues that he had an alibi for the dates in 1996 on which the state alleged the criminal acts occurred.

There is no actual innocence exception to § 2244(d)(1) within the language of the statute itself, and the United States Supreme Court has not ruled on the issue of whether a claim of actual innocence could equitably toll the one-year statute of limitations. Furthermore, in Doe v. Menefee, the Second Circuit noted that it had "specifically reserved the question of whether a claim of actual innocence based on newly discovered evidence constitutes an extraordinary circumstance that merits equitable tolling, . . . as well as the question of whether the Constitution would require equitable tolling for actual innocence." 391 F.3d 147, 154 (2d Cir. 2004).

The Second Circuit has instructed district courts faced with untimely petitions in which the petitioner asserts his actual innocence "to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence." Id. at 161 (citing Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003)). To establish a credible claim of actual innocence, a petitioner must

support his claim "'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial.'" Id. (quoting Schlup, 513 U.S. at 324). Actual innocence requires a showing of "factual innocence," not just "legal innocence." Id. at 162. The petitioner must also demonstrate that the new evidence, when considered in conjunction with the entire record, establishes "that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Schlup, 513 U.S. at 324, 327.

The respondent argues that the purported newly discovered evidence does not demonstrate Toccaline's factual innocence. The new evidence consists of testimony of witnesses at the petitioner's first state habeas hearing as to his whereabouts on the alleged dates of two of the three incidents involving the victim, June 29, 1996, and September 7, 1996. In effect, the petitioner contends that he did not commit the offenses which allegedly occurred in June, August and September 1996. At trial, the petitioner presented documentary and testimonial evidence that he had moved out of the home in which two of the incidents involving the victim had occurred prior to the date of the alleged incidents. Despite this evidence, the jury found him guilty of engaging in criminal conduct during each of the three incidents.

During the hearing on the first state habeas petition, the petitioner submitted additional witness testimony supporting his claim that on June 29, 1996, he moved out of the house in which the victim alleged the first and third incidents occurred and that on the date of the third incident, September 7, 1996, he was at a friend's wedding from 2:00 pm until after midnight. The petitioner presented no evidence of an alibi for the August 3, 1996, incident, which occurred on a boat owned by the victim's aunt and used

12

by petitioner.

With regard to his alibi for June 29, 1996, however, the petitioner testified at his first state habeas hearing that he was aware of these witnesses prior to and at the time of trial. (See Reply Obj. Mot. Dismiss, Habeas Tr. July 10, 2002 at 113-39.) Thus, the testimony of the additional witnesses was not new evidence. See United States v. Middlemiss, 217 F.3d 112, 122 (2d Cir. 2000) (holding that affidavit from new witness was not newly discovered evidence because trial counsel knew of the existence of the witness before trial; trial counsel with due diligence could have discovered evidence); Wambolt v. Hofman, No. 2:08-cv-250, 2009 WL 982170, at *6 (D. Vt. Apr. 13, 2009) (holding "statements by alibi witnesses who were known to [petitioner] at the time of his guilty plea" did not constitute newly discovered evidence sufficient to establish actual innocence in support of tolling limitations period) (citation omitted); Taylor v. Lantz, No. 3:07-cv-1915 (AHN), 2008 WL 4793726, at *3 (D. Conn. Oct. 28, 2008) ("Because this [psychiatric] evaluation existed at the time petitioner entered his plea, it is not newly discovered evidence to establish actual innocence in support of equitable tolling.") (citing Boyle v. Ortiz, 242 Fed. Appx. 529, 531 (10th Cir.2007) (evidence known to petitioner at time of guilty plea was not new for purposes of establishing actual innocence to warrant equitable tolling); Baker v. Norris, 321 F.3d 769, 772 (8th Cir.) (no equitable tolling based on claim of actual innocence where petitioner knew factual basis for claim at time of conviction), cert. denied, 538 U.S. 918 (2003)).

With regard to the petitioner's alibi for the September 7, 1996, incident, the petitioner's wife testified at the hearing in his first state habeas petition that she did not remember that she and the petitioner had attended the wedding of a friend of the

petitioner on that date until after the guilty plea, but before the sentencing hearing.  See Reply Obj. Mot. Dismiss (Doc. No. 29), Habeas Tr. July 10, 2002 at 171-77.   At the habeas hearing, the petitioner's friend and supervisor testified that he had been married on September 7, 1996, and that the petitioner and his wife[4] were present at the wedding and the reception from 4:30 to after midnight.  See id., Habeas Tr. July 9, 2002 at 36, 44-52.

The petitioner's attorney did not call this friend to testify at trial.  The petitioner conceded that he had not given his attorney the name of this friend prior to or during trial.  See id., Habeas Tr. July 10, 2002 at 134-35.  The petitioner offered no testimony as to why he did not give his attorney the name of his friend prior to trial or whether he had forgotten that he had attended the wedding on September 7, 1996.  Although the testimony of the petitioner's wife and friend is arguably new evidence that was not presented at trial, it does not constitute evidence to establish actual innocence of the crimes for which the petitioner was charged and convicted.

The respondent argues that the petitioner has presented a claim of legal insufficiency or legal innocence rather than factual innocence.  Legal innocence, however, does not constitute actual innocence.  See Bousley v. United States, 523 U.S. 614, 623 (1998) ("[A]ctual innocence means factual innocence, not mere legal insufficiency")  (citation omitted).  Although the petitioner contends that he did not engage in criminal conduct in 1996, his statement to the police, which was admitted at trial, indicates that he did engage in criminal conduct involving the victim at some time.  The new alibi evidence focuses on the September 1996 offense date and provides a

---

[4] At the time of the wedding, Mrs. Toccaline was the petitioner's girlfriend.

14

reason why the petitioner could not have committed the crimes against the victim on that date.  The evidence does not, however, address the facts in the petitioner's statement to the police or the testimony of the victim.

The Connecticut Supreme Court has stated that in cases of sexual assault and risk of injury to a child, time is not an essential element of the offenses.  See State v. Romero, 269 Conn. 481, 505 (2004) ("[T]ime was not an essential element of the offenses [sexual assault in the first and third degrees and risk of injury to a child] with which the defendant was charged."); State v. Laracuente, 205 Conn. 515, 519 (1987), ("Where time is not of the essence or gist of the offense [sexual assault in the fourth degree], the precise time at which it is charged to have been committed is not material."), cert. denied, 485 U.S. 1036, (1988) (internal quotation marks and citation omitted); State v. Lorusso, 151 Conn. 189, 191 (1963) ("[I]t is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations.").  Furthermore, under Connecticut law, "even if the defendant intended to present a defense of alibi, there is no per se requirement that the state limit the times in the information more narrowly than the evidence that is available warrants."  State v. Lucci, 25 Conn. App. 334, 343 (citing State v. Stepney, 191 Conn. 233, 241 n. 4 (1983), cert. denied, 465 U.S. 1084 (1984)), cert. denied, 220 Conn. 913 (1991).

At the hearing held in the first state habeas petition, the petitioner testified that the incidents he referred to in his statement to the police had occurred in 1995.

15

Furthermore, although the habeas judge found that trial and appellate counsel had been ineffective, he concluded that the petitioner had not shown by clear and convincing evidence that he was factually innocent due to his written confession given to the police. See Toccaline, No. CV020814816S, 2002 WL 31304820, at *16 ("This Court believes, . . . that but for counsel's errors, it is reasonably probable that there would have been a verdict of acquittal. However, with the existence of the alleged confession, Petitioner's written statement to the State Police, this Court cannot find by clear and convincing evidence that the Petitioner is factually innocent."). In reversing the decision granting the habeas petition on the grounds of ineffective assistance of trial and appellate counsel, the Connecticut Appellate Court found that, "even if the petitioner had been able to present additional alibi testimony, he would not have been able to refute the totality of the evidence before the . . . jury [including] . . . [his] own statement [which] render[ed] meaningless his latent alibi defense." Toccaline, 80 Conn. App. at 810-11.

Thus, the court concludes that the petitioner has failed to offer any new evidence that, viewed together with all of the other evidence presented at trial, shows that it is "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Schlup 513 U.S. at 327-28. Accordingly, the petitioner has not made a credible showing of actual innocence. Because the petitioner has not presented a "credible claim of actual innocence," equitable tolling is not warranted. Menefee, 391 F.3d at 161.

### 2. Equitable Tolling

The petitioner asserts that the State of Connecticut did not provide him with legal

assistance in order to pursue his remedies in federal court. He does not otherwise elaborate on this claim. The Second Circuit rarely has found extraordinary circumstances warranting equitable tolling. The few situations in which the Second Circuit has found an extraordinary circumstance involved obstacles such as a correctional officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, see Valverde, 224 F.3d at 133; an attorney's egregious failure to file a habeas petition on a prisoner's behalf despite explicit directions from his client to do so, see Baldayaque, 338 F.3d at 150; a state appellate court's failure to inform a prisoner that leave to appeal was denied, see Diaz, 515 F.3d at 154-55; and an attorney's failure to file his client's petition until one day after the limitations deadline, despite the fact that the petitioner had been persistent in maintaining contact with the attorney and had specifically instructed him not to wait until the last day to file, see Dillon v. Conway, 642 F.3d 358, 363-64 (2d Cir. 2011) (per curiam).

Ignorance of the law does not constitute an extraordinary circumstance to excuse the untimely filing of a federal habeas petition. Courts within the Second Circuit consistently have held that lack of legal knowledge or legal assistance is not an extraordinary circumstance warranting equitable tolling. See Diaz, 515 F.3d at 154 (failure of prison officials to provide habeas information in the prisoners' language did not constitute extraordinary circumstance warranting equitable tolling because the prisoners' made no efforts to contact anyone inside or outside the prison to assist them, in their language, in learning the legal requirements for filing a federal habeas petition); Smith, 208 F.3d at 18 (pro se status does not merit equitable tolling); Adkins v. Warden, 585 F. Supp. 2d 286, 297 (D. Conn. 2008) (holding solitary confinement, lack of

17

physical access to a law library, unfamiliarity with the law and legal rights and limited high school education did not constitute extraordinary circumstances sufficient to warrant tolling of limitations period), aff'd 354 Fed. Appx. 564 (2d Cir. 2009), cert. denied sub. nom. Adkins v. Semple, 131 S. Ct. 262 (2010); Walker v. McLaughlin, No. 04-cv-6172 (VEB), 2008 WL 941719, at *5 (W.D.N.Y. Apr.4, 2008) (citing cases holding that ignorance of the law, illiteracy, lack of access to law clerks, and lack of fluency in English are not extraordinary circumstances warranting equitable tolling); Muller v. Grenier, No. 03 Civ. 1844 (SAS), 2004 WL 97687, at *2 (S.D.N.Y. Jan. 20, 2004) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.") (internal quotation marks and citation omitted), aff'd, 19 Fed. Appx. 334 (2d Cir. 2005).

     The petitioner does not allege that he made any attempts to seek assistance with regard to filing a federal habeas petition or with regard to any of the statutes or cases governing the filing of a habeas petition in federal court. He was represented in connection with both of his state habeas petitions. He does not indicate that he made an attempt to ask those attorneys about filing a petition in federal court or whether he contacted the Connecticut Public Defender's office concerning any questions he had about pursuing his claims in federal court. The court concludes that petitioner's argument that he was unaware of the law and procedures for filing a habeas petition in federal court does not constitute an extraordinary circumstance warranting equitable tolling.

### III. CONCLUSION

The Motion for Leave to File an Amended Petition (**Doc. No. 27**) is **denied** on the ground that justice does not require the court to permit the petitioner to add a claim that is not cognizable in a federal habeas petition.  The Petition for a Writ of Habeas Corpus is untimely, and the circumstances do not warrant equitable tolling of the statute of limitations.   Accordingly, the Motion to Dismiss (**Doc. No. 14**) is **granted** and the Petition (**Doc. No. 1**) is **dismissed** as time-barred.

The court concludes that jurists of reason would not find it debatable that the petitioner failed to timely file this petition.  Thus, a certificate of appealability will not issue.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (holding that, when the district court denies a habeas petition on procedural grounds, a certificate of appealability should issue if jurists of reason would find debatable the correctness of the district court's ruling).  The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 23rd day of February, 2012.


       /s/ Janet C. Hall
Janet C. Hall
United States District Judge